**NOT FOR PUBLICATION**

**FILED**

JAMES J. WALDRON, CLERK

**APRIL 26, 2013**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ *Ronnie Plasner*

JUDICIAL ASSISTANT

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **In Re:**<br><br>**HAN-HSIEN TUAN,**<br><br>Debtor. | Case No.:     12-19848 (DHS)<br><br>Chapter 13<br><br>Judge:     Donald H. Steckroth, U.S.B.J. |
| **DEAN T. CHO,**<br><br>Plaintiff,<br><br>v.<br><br>**HAN-HSIEN TUAN, a/k/a/ HAN TUAN,**<br><br>Defendant. | Adv. Pro. No.: 12-01520 (DHS) |

**OPINION**

**<u>APPEARANCES:</u>**

Dean T. Cho, Esq.
440 Park Avenue South, 3rd Floor
New York, New York 10016
***Plaintiff Pro Se***

Scura, Mealey, Wigfield & Heyer, LLP
David L. Stevens, Esq.
1599 Hamburg Turnpike
Wayne, New Jersey 07470
***Counsel for Defendant***

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is a motion filed by the Plaintiff, Dean T. Cho ("Cho" or "Plaintiff"), seeking summary judgment on counts alleging non-dischargeability against the Defendant, Han-Hsien Tuan ("Tuan" or "Defendant"). The relief sought includes: (1) a declaratory judgment that the debt owed by the Defendant to the Plaintiff resulting from an arbitration award and state court judgment constitutes non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(4); and (2) awarding the Plaintiff judgment in an amount not less than $125,536.43 plus 9% interest from September 14, 2011 and court costs.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 as amended September 18, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The Plaintiff and Defendant each held a fifty percent (50%) partnership interest in the law firm Tuan & Cho, LLP ("T&C") from 2005 to 2008. Their interests in T&C are reflected in the Limited Liability Partnership Agreement ("Partnership Agreement") dated November 1, 2005. (*See* Pl.'s Br. in Support of Motion for Summ. J. ("Pl.'s Br."), Ex. A) The Plaintiff claims that in early 2008, the Defendant began to misappropriate and embezzle large sums of money from T&C, charge personal expenses to T&C, set up T&C bank accounts without the Plaintiff's knowledge, divert T&C fees to the secret accounts, and transfer funds from client escrow accounts to his personal accounts. (Pl.'s Br., p. 3, 6-7)

3

During Arbitration, the Plaintiff submitted the affidavit of T&C's former bookkeeper, Annie Ho ("Ho Affidavit").[1]   (Pl.'s Br., Ex. B)  The Ho Affidavit states that the Defendant charged "lease payments for multiple motor vehicles, personal family vacation expenses, payments to pay down debts of his prior law firm . . . , personal tax liabilities, and dining and entertainment expenses" to T&C's account.  (Pl.'s Br., Ex. B, ¶4)  The expenses charged by the Defendant left T&C's bank account overdrawn and unable to pay its bills.  (*Id.* at ¶5)

In 2008, the Plaintiff commenced an arbitration proceeding against the Defendant alleging breach of fiduciary duty and fraud.  (Pls. Br., p. 7)  The arbitrator ("Arbitrator"), awarded the Plaintiff $100,000.00 plus costs of $11,477.50.  (Pls. Br., pp. 7-8)  The following constitutes the Arbitrator's findings:

> 1. The Arbitrator FINDS that the books and records of Tuan & Cho, LLP (T&C) were terribly lacking, and were not kept in conformity with normal business standards and were not kept in conformity with the provisions of the T&C Partnership Agreement.
> 2. The Arbitrator FINDS that Respondent Tuan was the partner responsible for maintaining T&C's books and records.  This determination is based on the testimony of the former bookkeepers [sic], the testimony of the parties, the evidence that showed Tuan as signatory on a majority of the checks issued by the partnership, the evidence that showed that Tuan prepared the partnership tax returns and the testimony and evidence that showed that Tuan reviewed and maintained control over the general ledger.
> 3. The Arbitrator FINDS that Respondent did not fully cooperate with the discovery process and that the gaps in the T&C books and records could have been filled in had the Respondent been able to locate the missing partnership records and/or the personal records requested.
> 4. The Arbitrator FINDS that there was sufficient evidence presented that showed Respondent Tuan engaged in suspicious and

---

[1] The Ho Affidavit was dated May 15, 2008 and made prior to the arbitration.  Ms. Ho was not a party to the arbitration and is not a party to this adversary proceeding.

unethical transactions with regards to T&C and furthermore, that Respondent Tuan showed a disregard for the normal business standards that any partner should follow.

5. Based on the above FINDINGS, the Arbitrator has determined that a negative inference is appropriate and therefore it is determined that the missing information would be detrimental to the Respondent.

6. The Arbitrator FINDS that the Respondent Tuan had taken more distribution and fringe benefits from T&C than he was entitled to. This FINDING is based on the evidence produced at the hearing; the expert report presented by the Claimant; the fact that the Respondent had agreed for some time to allow the Claimant to withdraw an additional $4,000 per month in order to compensate Cho for such prior excess distributions; the negative inference against Respondent Tuan discussed previously, and the general dollar amount, type and manner of the personal distributions taken by Respondent Tuan.

(Pl.'s Br., Ex. J)

Subsequently, the Defendant failed to pay the award and the Plaintiff sought confirmation in the Supreme Court of the State of New York.  On September 14, 2011, the New York court confirmed the Arbitrator's award in all respects and granted the Plaintiff $125,536.43 plus legal interest of 9% from September 14, 2011.  (Pls. Br., p. 10)  The Defendant thereafter filed a Chapter 13 bankruptcy petition on April 16, 2012.  The Plaintiff filed a proof of claim and instituted this adversary proceeding seeking a determination that the debt owed by the Defendant is non-dischargeable.  (*Id.*)

## DISCUSSION

The Plaintiff claims that the Defendant committed fraud and defalcations while acting in a fiduciary capacity, thereby making the Defendant's debt non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).  The Plaintiff also claims that the arbitration award, confirmed in a New

5

York State court judgment, precludes the relitigation of the Defendant's breach of fiduciary duty by the doctrine of collateral estoppel.

The Defendant argues that the Plaintiff's collateral estoppel claim is predicated on out-of-court documentary statements that constitute inadmissible hearsay under Rule 801(c) of the Federal Rules of Evidence.  Further, the Defendant contends that genuine issues of material fact exist, making summary judgment inappropriate in regard to the collateral estoppel doctrine.  The Defendant also argues that the Plaintiff is barred from claiming a breach of fiduciary duty existed because that claim was not arbitrated and is, therefore, subject to the Entire Controversy Doctrine.

## I.   <u>Summary Judgment Standard</u>

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Id.*  At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial."  *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The court must construe facts and inferences in a light most favorable to the non-moving party.  *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)).  "Only evidence admissible at trial may be used to test a summary judgment motion.  Thus, evidence whose foundation is deficient must be excluded

from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23. When one party moves the court for summary judgment, Federal Rules of Civil

Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

## II.    <u>Fiduciary Duty</u>

Under section 523(a)(4), "[a] discharge under section . . . 1328(b) of this title does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."   To establish a claim of non-dischargeability based on defalcation while acting in a fiduciary capacity, the creditor must prove by a preponderance of the evidence that "(1) there was a pre-existing fiduciary relationship between the debtor and the creditor; (2) debtor acted in violation of that relationship; and (3) the creditor suffered an economic loss as a consequence."   *Pa. Lawyers Fund for Client Security v. Baillie (In re Baillie)*, 368 B.R. 458, 469 (Bankr. W.D. Pa. 2007).

In determining the dischargeability of debt, a fiduciary duty between the creditor and debtor must exist in order for section 523(a)(4) to apply.  The Plaintiff argues that a fiduciary relationship was created when the parties entered into the T&C partnership agreement.  The Defendant, citing *State of New Jersey v. Kaczynski (In re Kaczynski)*, 188 B.R. 770 (Bankr. D.N.J. 1995), argues that courts have limited the definition of fiduciary with respect to section 523(a)(4) to situations where the fiduciary holds an express or technical trust on behalf of the creditor and that neither has been created in this case.

The Court previously addressed this issue in *Buttimore v. Wolke* and stated that "[a]

technical trust is not as clearly defined.  Instead it is one that arises out of state statutory or

common law."  No. 07-01756, 2008 WL 413316, at *5 (Bankr. D.N.J. Feb. 13, 2008) (citing

*State of New Jersey v. Kaczynski (In re Kaczynski)*, 188 B.R. 770, 774 (Bankr. D.N.J. 1995)); *In*

*re Stone*, 90 B.R. 71, 79 (Bankr. S.D.N.Y. 1988).  Here, New York law is controlling on issues

of state law given that T&C was registered as a New York limited liability partnership and its

principal place of business was in New York.  The Plaintiff cites to Section 43 of the New York

Partnership Act for the proposition that the pre-existing partnership between the parties "clearly

constituted a 'technical trust relationship.'"  *See* N.Y. Partnership Law § 43.  Section 43, entitled

Partner Accountability as a Fiduciary, states that:

> Every partner must account to the partnership for any benefit, and
> hold as trustee for it any profits derived by him without the consent
> of the other partners from any transaction connected with the
> formation, conduct, or liquidation of the partnership or from any
> use by him of its property.

N.Y. Partnership Law § 43.  However, New York courts have held that the statutory language of

the New York Partnership Act is insufficient by itself to establish a fiduciary relationship

between partners for purposes of section 523(a)(4).  *See Zohlman v. Zoldan*, 226 B.R. 767, 773-

74 (S.D.N.Y. 1998).  The *Zohlman* court stated, however, that:

> [i]f state common law has raised the duties of partners beyond
> those required by the literal wording of the statute, so as to create
> an express or technical trust by common law rather than by
> statutory law alone, then § 523(a)(4)'s fiduciary requirement can
> still be met.
>
> This is precisely the situation in regard to New York
> partnership law. Beyond the express language of N.Y. Partnership
> Law § 43, New York partners are all at times accountable to one
> another as trustees or fiduciaries. New York common law has
> raised the duties of partners above the level of § 43, so that the true

> contours of a partner's fiduciary obligations are defined prior to
> and independent of the act which created the debt in question.

226 B.R. at 774 (citations omitted).  The Court finds this instructive as it squarely addresses the

issue here.  Furthermore, courts have held that a managing partner in a partnership be held to a

higher standard than a non-managing partner.  *See e.g.*, *Meinhard v. Salmon*, 164 N.E. 545, 548

(N.Y. 1928) ("[Defendant] was a managing [partner].  For him and for those like him the rule of

undivided loyalty is relentless and supreme.").

    In the case at bar, it is undisputed that Cho and Tuan were fifty percent (50%) equity

partners in their law firm.  Findings of the Arbitrator and the Ho affidavit reveal that Defendant

was in charge of overseeing the expenses of the Firm and its books and records.  While this may

not necessarily be the role of a managing partner as expressed in *Meinhard*, it furthers the

contention that Tuan be held to a high standard of loyalty and that a fiduciary duty existed.

    There is no dispute that the Plaintiff and Defendant entered into the T&C Partnership

Agreement to engage in the practice of law as equal partners and that they did so from 2005

through 2008.  As stated in *Zohlman,* under New York common law, this is sufficient to establish

a fiduciary relationship between the partners.  Here, the Defendant owed the Plaintiff a pre-

existing fiduciary duty for purposes of section 523(a)(4).

**III.    Breach of the Fiduciary Duty**

    **a.  Prior Proceedings Barring Litigation – *Res Judicata*,
       Collateral Estoppel, and the Entire Controversy Doctrine**

    The doctrines of *res judicata* or claim preclusion, and collateral estoppel or issue

preclusion, are raised by the parties in an attempt to argue whether certain claims and issues may

be litigated.  The Plaintiff argues that the issue of breach of fiduciary duty was determined by the

Arbitrator and cannot be relitigated under the doctrine of collateral estoppel.  In response, the

Defendant argues that collateral estoppel does not apply because it is not clear what issues were actually litigated and, further, that the doctrine of *res judicata* does not bar relitigation of claims that were previously decided.  The Defendant further argues that *res judicata* is inapplicable in adversary proceedings based on state court judgments or arbitration proceedings and, alternatively, that where findings are based on arbitration proceedings procedural variances may preclude the doctrine from being applied.  The issue is whether the findings of the arbitrator preclude relitigating the issues existing in the present adversary proceeding.

The doctrine of *res judicata*, sometimes more narrowly referred to as claim preclusion, is "[a]n affirmative defense barring the same parties from litigating a second lawsuit on the same claim, or any other claim arising from the same transaction or series of transactions and that could have been – but was not – raised in the first suit."  BLACK'S LAW DICTIONARY 1337 (8th ed. 2004).  This issue was squarely addressed in *Brown v. Felsen* (*In re Felsen*), 442 U.S. 127 (1979) and subsequent cases.  In *Felsen*, the Supreme Court considered whether a debtor who had reduced the fraud claims against it to a pre-petition settlement without any mention of the word "fraud" could relitigate those issues in connection with nondischargeability proceedings in the bankruptcy court.  *Id.* at 129.  The Supreme Court held that "the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of respondent's debt.  Adopting the rule respondent urges would take § 17 [now § 523] issues out of bankruptcy courts well suited to adjudicate them."  *Id*. at 138–39.

In *In re Graham*, 973 F.2d 1089 (3d Cir. 1992), the Third Circuit addressed the application of *Felsen* in the converse situation more akin to the case at bar: whether a creditor seeking the non-dischargeability of its claim based on a finding of fraud from another court can

utilize *res judicata* to bar the debtor from forcing the issue to be relitigated in the Bankruptcy

Court. 973 F.2d at 1095. In *Graham*, the Third Circuit acknowledged the policy reasons behind

bankruptcy matters, stating:

> we think that Congress's intent to leave dischargeability questions
> for the bankruptcy courts rather than state or other federal courts,
> along with the fact that the fraud question was not realistically a
> question presented in the Tax Court, overbears the strong policy in
> favor of repose as to issues that could have been litigated in a case
> in which judgment is now final.

*Id.* at 1096. The court held, similar to the Supreme Court in *Felsen*, that the bankruptcy court

should "decide the dischargeability question in the first place, using whatever evidence it deems

relevant and proper as proffered by each party." *Id.*

Here, we have facts very similar to those in *Graham*. The plaintiff/creditor seeks to

assert *res judicata* to obtain a declaration from this Court that a prior finding and judgment

against the debtor bars discharge of his debt. *Graham* dictates that *res judicata* does not apply

to the case at bar; thus, denial of summary judgment is proper insofar as it is predicated on a

finding that the doctrine should apply.

The parties further contend that collateral estoppel, or issue preclusion, is also applicable.

This doctrine is a well-defined concept. The court in *Gruntal & Co. v. Steinberg* explained that:

> Issue preclusion precludes the relitigation of an issue that has been
> put in issue and directly determined adversely to the party against
> whom the estoppel is asserted. Issue preclusion does not extend to
> collateral issues nor to matters inferred from the judgment. The
> doctrine of issue preclusion may be invoked where:
>
> (1) the identical issue was decided in a prior adjudication;
>
> (2) there was a final judgment on the merits;
>
> (3) the party against whom the bar is asserted was a party or in
>     privity with a party to the prior adjudication; and

12

> (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in the prior matter.

854 F.Supp 324, 336 (D.N.J. 1994) (citations omitted). Critically, "[t]he issue must have been distinctly put in issue and directly determined adversely to the party against which the estoppel is asserted." *Id.* at 336–37. The party asserting the doctrine must show with clarity and certainty that the issue was determined by the prior judgment and must do so by introducing a sufficient record of the prior proceeding to determine the exact issues litigated. *Id.* at 337. It is worth noting that "[r]easonable doubts as to what was decided by a prior judgment should be resolved against using it as an estoppel." *Id.*

In evaluating the claims of the parties, this Court is mindful that while collateral estoppel may be applicable to issues resolved by an earlier arbitration, it is not appropriate in all cases due to procedural variances, *i.e.*, admissibility of hearsay evidence, the opportunity of parties to present and rebut evidence, or the personal whims of arbitrators. *Gruntal & Co.*, 854 F.Supp. at 337. Furthermore, a judicial confirmation of the arbitration award, as is present here, does not necessarily mean that collateral estoppel should be applied. It is merely a minimum requirement to finding a "final judgment," and without it, collateral estoppel cannot be applied. *See id.* at 337.

In the case at hand, collateral estoppel does not apply as reasonable doubt exists as to what was decided in the prior arbitration. First, the findings of the Arbitrator do not conclusively state that the Defendant breached his fiduciary duty or is guilty of defalcation, the issues at bar. The findings simply state that the Defendant took more fringe benefits than he was entitled and engaged in suspicious behavior and transactions. Moreover, the Plaintiff has failed to submit a record of the prior proceeding so that it can be determined what issues were previously litigated.

The Plaintiff argues that, pursuant to the goal of arbitration to expedite and streamline cases, arbitrators are not held to the same procedural standards as are present in litigation.  (Pl.'s Reply Br., p. 10)  Thus, the Plaintiff contends, judicial review of arbitration awards is merely to determine if a party was given a fair hearing and hearsay or speculative evidence does not undermine an arbitrator's decision.  (*Id.* (citing *D.E.I., Inc. v. Ohio and Vicinity Regional Council of Carpenters*, 155 Fed. Appx. 164, 170 (6th Cir. 2005))  While this argument would be applicable if the case before this Court was a review of the Arbitrator's award, such is not the case.

The Defendant also argues that the Partnership Agreement requires all disputes to be resolved in arbitration, and therefore, the claim for breach of fiduciary duty should have been pursued there at that time.  Because it was not decided in arbitration, the Defendant contends it is now barred by the entire controversy doctrine.  This argument is misplaced.  If the Defendant argues that neither *res judicata* nor collateral estoppel should apply due to this Court's inability to determine the issues litigated and decided in the prior proceedings, equity and fairness dictate that the Defendant should not now claim that breach of fiduciary duty must be barred because it was not asserted in the prior proceedings.  Simply put, Defendant cannot, on one hand, claim that the issues of defalcation and fraud must be litigated here and, on the other hand, argue that they cannot be argued here because they should have been argued in arbitration.  The Plaintiff brought claims against the Defendant in arbitration, introduced evidence regarding the Defendant stealing or diverting partnership assets, obtained a significant arbitration award against the Defendant, had that award affirmed in state court over the objections of the Defendant, and now, because the Defendant filed bankruptcy, is asserting its claims for the third time.  It is the Defendant's position that the prior proceedings and findings are not binding on this Court.  The Defendant,

14

therefore, should be prepared to litigate the claims for non-dischargeability asserted against him here.

### b. **The Presence of Defalcation**

The Plaintiff claims that defalcation was established on the part of the Defendant, thereby constituting a breach of the fiduciary duty and making the Debtor's debt non-dischargeable under section 523(a)(4).  The Plaintiff argues that the findings from the arbitration proceeding, as confirmed by the state court, establish defalcation.  The Defendant argues that those findings are not conclusive on this Court because: (1) they are not entitled to the doctrine of issue preclusion; (2) the findings are based on hearsay evidence that, while admissible in arbitration, is inadmissible in this Court; and (3) the findings, even if relevant, do not establish defalcation as they illustrate only "suspicious and unethical transactions" and that "[the Defendant] had taken more distributions and fringe benefits from T&C than he was entitled." (Pl. Br., Ex. J)

The Third Circuit, at present, has not provided a definition of defalcation.  *Wolke*, 2008 WL 413316 at *7.  In reviewing the definitions provided by other courts, defalcation requires some showing of affirmative misconduct, but that no element of intent or bad faith is required. *Id.*

Given the definition adopted by this Court, the Defendant's conduct rises to the level of defalcation when considering the cumulative evidence presented with the motion.  The Defendant argues that such a finding cannot be reached because the Arbitrator's findings are inconclusive as neither collateral estoppel nor *res judicata* applies and because evidence considered in arbitration would not be admissible at trial.  Even if the Court does not afford the Arbitrator's findings to meet the standard of preclusion, those findings, while not conclusive, are

15

still relevant to the Court's determination of whether the Defendant committed a defalcation.  As

such, the Arbitrator's findings include:

> [T]hat there was sufficient evidence presented that showed Respondent Tuan engaged in suspicious and unethical transactions with regard to T&C . . .
>
> [T]hat a negative inference is appropriate and therefore it is determined that the missing information would be detrimental to the Respondent.
>
> [T]hat the Respondent Tuan had taken more distribution and fringe benefits from T&C than he was entitled to.  This FINDING is based on the evidence produced at the hearing; the expert report presented by the Claimant; the fact that the Respondent had agreed for some time to allow the Claimant to withdraw an additional $4,000 per month in order to compensate Cho for such prior excess distributions; the negative inference against Respondent Tuan discussed previously, and the general dollar amount, type and manner of the personal distributions taken by Respondent Tuan. (Emphasis added)

(Pl.'s Br., Ex. J)  Moreover, the Ho Affidavit reveals that the Defendant "consistently charged

large amounts of personal expenses to T&C's account . . . including, but not limited to, . . . lease

payments for multiple motor vehicles, personal family and vacation expenses, payments to pay

down debts of his prior law firm, . . . dining and entertainment expenses," and other

miscellaneous expenses.  (Pl's Br., Ex. B, ¶4)  The Ho Affidavit also brings to light the fact that

the Defendant's expenses left T&C's bank account frequently overdrawn, thereby, "incur[ing]

many thousands of dollars in bank overdraft fees."  (*Id*. at ¶5)  Furthermore, when addressed by

the Court during oral argument, Defendant's counsel could not deny that the Defendant took

more funds than which he was entitled.  Based on the collective findings of the Arbitrator, the

Ho Affidavit, and the acknowledgment of counsel, this Court holds that sufficient evidence

16

exists to allow a determination that the Defendant committed defalcation while acting in a fiduciary capacity and that Plaintiff was damaged by such conduct.

### c. **Larceny and Embezzlement**

Section 523(a)(4) also provides that a discharge will not be granted if embezzlement or larceny is demonstrated. 11 U.S.C. § 523(a)(4). The necessary elements of embezzlement, as agreed upon by both parties, are: "(1) the debtor was entrusted; (2) with property; (3) of another; (4) which the debtor appropriated for his own use; and (5) with fraudulent intent." *Islinger v. Hillisheim*, 2011 WL 1332185, *3 (Bankr. D.N.J. April 6, 2011). Here, the Defendant argues that genuine issues of material fact exist with regard to both embezzlement and larceny because the factual findings of the Arbitrator are not conclusive on the required elements. Furthermore, as discussed above, the Defendant argues that the evidence relied on by Plaintiff is subject to hearsay and authentication objections that undermine the claims. The Plaintiff argues that the required elements of embezzlement are satisfied based on the findings of the Arbitrator and are underscored by the allegations set forth in the complaint. The Plaintiff provides no response to the Defendant's contention that larceny has not been established.

As noted, the findings of the Arbitrator are not conclusive in this proceeding and, therefore, summary judgment should not be granted on these elements. Even taking the findings of fact as persuasive, they are insufficient to establish the last element: intent to defraud. Mere discussion of suspicious activity and failure to cooperate in the arbitration proceeding do not establish intent to defraud and the Arbitrator made no such finding. This is not to say that such a finding could not be established during a trial, but not on summary judgment. Accordingly, summary judgment is denied insofar as it is sought on the basis that the Defendant was guilty of embezzlement or larceny pursuant to section 523(a)(4).

## <u>CONCLUSION</u>

For the reasons set forth above, summary judgment in favor of Plaintiff is granted.  A judgment in the amount of $125,536.43 plus 9% interest from September 14, 2011 to April 16, 2012, the date of the Petition, for the debt owed by the Defendant to the Plaintiff constitutes a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(4).

An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

s/ *Donald H. Steckroth*

_____

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated:  April 26, 2013